NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ERIC BAYDA, | : | Case No. 2:18-cv-17419-BRM-JAD |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| HOWMET CASTINGS & SERVICES, et al.,: | | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Howmet Castings & Services, Inc. ("Howmet") and Arconic, Inc. ("Arconic") (collectively, "Defendants") Motion to Dismiss Plaintiff Eric Bayda's ("Bayda") Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 6.) Bayda filed Opposition (ECF No. 15) and Defendants filed a Reply. (ECF No. 16.) Having reviewed the submissions filed in connection with the motions and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause appearing, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

### I. BACKGROUND

#### A. Factual Background

For the purposes of this Motion, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable to the Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory*

*Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

Bayda, a resident of Tatamy, Pennsylvania, was employed by Schutz Container Systems Inc. ("Schutz") when he interviewed for a human-resources position at Howmet in November 2016. (ECF No. 1 ¶¶ 1, 26.) Bayda was interested in working for Defendants because their corporate predecessor, aluminum maker Alcoa, Inc., "was a 'cutting edge' company with a welcoming culture." (*Id.* ¶ 14.) During initial meetings with Defendants, Bayda interviewed with "Tera Grinnell, a Director of Human Resources." (*Id.* ¶ 15.) In this interview, Bayda was told the human-resources manager job was open because the prior holder of the position, Pilar Gilgorri ("Gilgorri"), "had decided to step down for 'personal reasons.'" (*Id.* ¶ 17.) More specifically, Bayda was told Gilgorri "was 'at a stage in her life where she did not need the stress of a manager's job.'" (*Id.* ¶ 18.) When asked if he would have a problem working as a supervisor of his predecessor, Bayda said he would not. (*Id.* ¶¶ 19, 20.)

During a second round of interviews in December 2016, Bayda met with a variety of personnel at Defendants' Dover, New Jersey, plant including Gilgorri, Plant Manager William Miley ("Miley"), and Global Human Resources Director Rebecca Reid ("Reid"). (*Id.* ¶¶ 21, 22.) In the interview with Reid, Bayda again was asked if he "would be okay with Gilgorri continuing to work in the Human Resources Department reporting to him." (*Id.* ¶ 23.) Bayda confirmed this would not be a problem. (*Id.* ¶ 24.)

On January 3, 2017, Bayda accepted an offer to become Human Resources Manager at Defendants' Dover, New Jersey plant, reporting to Miley. (*Id.* ¶ 25.) Bayda resigned from Schultz on January 6, 2017, and began working for Defendants on January 24, 2017. (*Id.* ¶¶ 26, 27.) On January 31, 2017, Grinnell told Bayda the real reason Gilgorri stepped down from the manager's

position: it was part of a settlement of her harassment complaint against Miley under which she would step down but receive the same salary she received as a Human Resources Manager as well as a retention bonus. (*Id.* ¶¶ 29-32.) Several months later, on October 11, 2017, Bayda was let go because "it was not working out" and he could "not make changes fast enough.'" (*Id.* ¶ 35.) Bayda had no indication before October 11, 2017, his job was in jeopardy. (*Id.* ¶ 36.)

Bayda alleges Defendants committed "fraud in the omission" when they failed to tell him the real reason the Human Resources Manager post was open. (*Id.* ¶¶ 37-38.) Moreover, Bayda contends this silence was intentional because Defendants "knew, suspected, or had reason to know or suspect that Bayda would not have accepted the job offer and resign from his previous employment had he been informed of the true reason why Gilgorri had stepped down." (*Id.* ¶¶ 39-42.) Defendants committed fraud by misrepresentation, Bayda alleges, when they said Gilgorri stepped down for "personal reasons," though they knew her stepping down was a condition of the settlement of her harassment complaint against Miley. (*Id.* ¶¶ 43-46.) This also was done, Bayda claims, with an intent that Bayda would rely on this misrepresentation. (*Id.* ¶ 44.) Bayda says he reasonably relied on these misrepresentations and omissions of fact and that, "as a direct and proximate result of Plaintiff's reasonable reliance on Defendants' misrepresentations and omissions of fact[,] . . . Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages." (*Id.* ¶¶ 40, 50.)

**B. Procedural History**

On December 19, 2018, Bayda filed this Complaint against Defendants alleging one count of "Fraud and Misrepresentation" and seeking compensatory and punitive damages for past and future lost wages, emotional distress, mental anguish and loss of life's pleasures, among other relief. (ECF No. 1 at 8.) On March 25, 2019, Defendants filed this Motion to Dismiss the

Complaint. (ECF No. 6.) By letter dated April 1, 2019—and in response to the Court's Text Order of March 26, 2019—Defendants informed the Court that Defendant "Arconic is incorporated in Delaware with its principal place of business in New York[, while] Howmet is incorporated in Delaware with its principal place of business in Michigan." (ECF No. 12 at 1.) As a result of those citizenships, the Court found diversity jurisdiction existed. (ECF No. 14.) On May 6, 2019, Bayda filed Opposition to Defendants' Motion to Dismiss (ECF No. 15) and on May 10, 2019, Defendants filed a Reply Brief to Bayda's Opposition to the Motion to Dismiss. (ECF No. 16.)

## II.   LEGAL STANDARD

### a.   Rule 12(b)(6) Standard

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). However, courts are "not compelled to accept 'unsupported conclusions and unwarranted inferences,'" *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quoting *Schuylkill Energy Res. Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997)), nor "a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286.

While, as a general rule, the court may not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to Rule 12(b)(6), the Third Circuit has held that "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant to Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "document *integral*

to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996)).

### b. Rule 9(b) Standard

Pursuant to Fed. R. Civ. P. 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake, although intent, knowledge, and other conditions of a person's mind may be alleged generally." *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 249 (3d Cir. 2017) (citations omitted); *see also U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (holding that a "plaintiff alleging fraud must . . . support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue") (citations omitted). Accordingly, "a party must plead [its] claim with enough particularity to place defendants on notice of the 'precise misconduct with which they are charged.'" *United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 502 (3d Cir. 2017) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Still, while "fraud claims are subject to the strictures of Rule 9(b), courts within this district have held that the heightened pleading standard 'is somewhat relaxed in a case based on a fraudulent omission.'" *Schechter v. Hyundai Motor America*, 2019 WL 3416902, at *9 (D.N.J., 2019) (citing *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 451 (D.N.J. 2012); *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 614 (D.N.J. 2014).

### III. DECISION

Defendants argue the Complaint should be dismissed because Bayda's fraud claim fails as a matter of fact and of law. Defendants contend Bayda's fraud claim fail as a matter of law because "Defendants did not owe a duty to Bayda to disclose information about another employee's

decision to accept a different position." (*See* Defs.' Br. in Support of Mot. to Dismiss (ECF No. 6-1) at 1.) Bayda's claim fails as a matter of fact, Defendants contend, because the "alleged 'misrepresentation,' which is the entire factual premise of this claim, is not a false statement of fact." (*Id.*). Defendants allege their "former Human Resources Manager did step down for 'personal reasons,' i.e., due to her harassment complaint." (*Id.*)

Bayda counters that Defendants did owe a duty to Bayda to disclose the real reason for Gilgorri's demotion because "New Jersey's Courts have recognized the 'growing trend to impose a duty to disclose in many circumstances in which silence [has] historically sufficed.'" (*See* Pl.'s Br. in Opp. to Mot. (ECF No. 15) at 5 (citing *United Jersey Bank v. Kensey*, 704 A.2d 38, 45 (App. Div. 1997)).)

Bayda relies on the *Kensey* Court's application of the Restatement (Second) of Torts, which, among other things, "imposes a duty upon a party to disclose a fact 'which the individual knows may justifiably induce another to act, or refrain from acting.'" (*Id.* (citing *Kensey*, 704 A.2d at 45 (quoting Restatement (Second) of Torts § 551 (1977 & Supp. 1997)).) Bayda further cites *Shebar v. Sanyo Systems*, where "New Jersey's Appellate Division upheld a plaintiff's claim that the Defendant, his then-current employer, made a fraudulent misrepresentation in extending him an offer to remain employed with the Company." (*Id.* at 8 (citing *Shebar*, 526 A.2d 1144 (App. Div. 1987).)

Separately, Bayda contends the Complaint meets the Rule 12(b)(6) standard to survive this Motion because

> under any reasonable reading, the factual content of Plaintiff's Complaint allows for two fundamental inferences to be drawn: (1) that Defendants knew, or at the very least suspected, that the true cause of Gilgorri stepping down from her position would have been material to Plaintiff accepting Defendants' offer; and (2) that Defendants knew that Plaintiff, in assessing whether to accept

> employment with Defendants, had no choice but to trust
> Defendants' explanation as to why Gilgorri had "stepped down."

(*Id.* at 6.) Therefore, because all inferences to be drawn from the facts are to be view in the light most favorable to Plaintiff in a Rule 12(b)(6) motion, Bayda argues, the Motion should be denied. (*Id.* at 7.)

In reply, Defendants argue *Kensey* is not germane to this Motion as that case involved the relationship between a bank and a borrower, not between an employer and a potential employee. (*See* Defs.' Reply (ECF No. 16) at 3-4.) Defendants further argue that Bayda's reliance on the Restatement (Second) of Torts is misplaced because the Restatement "mak[es] clear that the 'implicit trust' component requires a 'relation of trust and confidence between [the parties]' such as 'executor of an estate and its beneficiary, a bank and an investing depositor, and those of physician and patient, attorney and client, priest and parishioner, partners, tenants in common and guardian and ward.'" *Id.* at 4 (quoting Restatement (Second) of Torts § 551(2)(a).) "Notably absent from that list," Defendants say, "is employer and employee, let alone potential employer." (*Id.*)

Bayda brings his one-count Complaint under New Jersey's common law, claiming fraud both in the omission and by misrepresentation. To state a claim of fraud under New Jersey's common law, a plaintiff must show: (1) the defendant knowingly made a material misrepresentation; (2) the defendant intended plaintiff to rely on the misrepresentation; (3) plaintiff reasonably relied; and (4) resulting damages. *United States ex rel. Doe v. Heart Sol., PC*, 923 F.3d 308, 318 (3d Cir. 2019) (citing *Banco Popular N. Am. v. Gandi*, 876 A. 2d 253, 260 (N.J. 2005).) The Court's inquiry begins with an examination of Bayda's claim of fraud in the omission.

### a. Fraud by Omission

Bayda contends Defendants committed fraud in the omission by failing to disclose the real reason the position for which he applied was open: that Gilgorri stepped down as a condition of

settling a harassment complaint she had lodged against the manager of the Dover, New Jersey plant, Miley. Defendants contend they did not "owe a duty to Bayda to disclose information about another employee's decision to accept a different position." (ECF No. 4-1 at 1.)

"Silence, in the face of a duty to disclose, may be a fraudulent concealment." *Warwick Dev., LLC v. McGruder*, No. A-4823-12T3, 2014 WL 2197939, at *1 (N.J. Super. Ct. App. Div. May 28, 2014) (citing *Berman v. Gurwicz,* 458 A.2d 1311, 1313 (N.J. Super. Ct. Ch. Div. 1981), *aff'd o.b.,* 458 A.2d 1289 (N.J. App. Div.), *certif. denied,* 468 A.2d 197 (N.J. 1983).) That said, "where a claim for fraud is based on silence or concealment, New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 602– 03 (D.N.J. 2016) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993)). *Argabright* further teaches that a duty to disclose arises under New Jersey law:

> (1) when there is a fiduciary relationship between the parties; (2) when one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied; and (3) when the relationship involving the transaction is 'so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties,' for example, an insurance contract.

*Argabright*, 201 F. Supp. 3d at 603 (citing *Lightning Lube*, 4 F.3d at 1185). As the *Argabright* Court stated:

> For a duty to disclose to arise, one party must 'expressly repose[ ] a trust and confidence in the other; or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case [must be] necessarily implied.

*Id.* (citing *Berman*, 458 A.2d at 1313).

The Restatement (Second) of Torts posits that a duty to disclose exists where one party knows the disclosure of a fact "may justifiably induce the other to act or refrain from acting in a

business transaction." Restatement (Second) of Torts § 551 (1977). The question facing the Court is whether the relationship between an employer and a potential employee implies such a repository of trust and confidence as to impose a duty to disclose on the employer.

Defendants contend an employer-employee relationship cannot give rise to a duty to disclose. Defendants cite four cases that stand for the proposition that employers do not owe a fiduciary duty to their employees. (ECF No. 6-1 at 6.) The three cases from the U.S. District Court for the District of New Jersey are distinguishable on the facts, while the one most similar to this case, involving an employee who resigned from one job in order to take another based on an employer's promise, comes from the Middle District of Pennsylvania. (*Id.* (citing *Pero v. Int'l Bus. Machines Corp.*, No. 12-CV-07484 KM, 2014 WL 37233, at *4 (D.N.J. Jan. 2, 2014)); *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 444 (D.N.J. 2011); *Daley v. Cmty. Med. Ctr., Inc., and St. Barnabas Med. Ctr., Inc.,* 2006 U.S. Dist. LEXIS 89581 at *28 (D.N.J. December 12, 2006) and *McCarthy v. Luzerne Cty.*, No. 3:11-CV-0096, 2011 WL 2607174, at *4 (M.D. Pa. July 1, 2011).) It is instructive that none of these cases found a confidential or trust connection to exist between an employer and employee from which a duty to disclose would arise. Therefore, this Court cannot extrapolate from these cases how a confidential relationship from which would arise a duty to disclose could manifest itself in the more-tenuous association of an employer and a prospective employee. After all, what Bayda alleges concerns alleged omissions by employees of Defendants' during the interview process, a time when Bayda was not yet employed by Defendants.

Bayda cites *Kensey* for the proposition that "New Jersey's Courts have recognized the 'growing trend to impose a duty to disclose in many circumstances in which silence [has

historically sufficed.'" (ECF No. 15 at 5 (citing *Kensey*, 704 A.2d at 45).)[1] However, Bayda presents no authority—nor is the Court aware of any—standing for the proposition that, in New Jersey, an employer and employee, simply by virtue of their present or future employment relationship, stand in a relationship under which would naturally arise a duty to disclose. Moreover, the Court observes that *Kensey* involved a dispute between a mortgagor and a mortgagee, parties whose contractual relationship is much closer than that between an employer and a prospective employee. Indeed, three of the four cases to which the *Kensey* Court cited for its conclusion about the expansion of duty involved customer complaints against banks and whether a fiduciary relationship existed therein.[2]

Bayda cites the *Kensey* court's analysis of subsection two of the Restatement (Second) of Torts, which, according to Bayda,

> imposes a duty upon a party to disclose to another "facts basic to the transaction, if he knows that the other is about to enter into it under a mistake . . . and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."

(ECF No. 15 at 5 (citing *Kensey*, 704 A.2d at 45).) But, the *Kensey* court was parsing the Restatement in the context of bank-customer relationships, something apparent in the court's conclusion that the broader sweep of a duty to disclose contemplated by subsection two was reflected "in a lengthening line of decisions holding banks and other lending institutions liable to

---

[1] The *Kensey* Court cited four cases for this proposition: *Chiarella v. United States,* 445 U.S. 222, 248, 100 S. Ct. 1108, 1124, 63 L. Ed. 2d 348, 369 (1980) (Blackmun, J., dissenting); *Capital Bank v. MVB, Inc.,* 644 So. 2d 515; *First Nat'l Bank in Lenox v. Brown,* 181 N.W. 2d 178 (Iowa 1970); *Trans–Global Alloy Ltd. v. First Nat'l Bank of Jefferson Parish,* 583 So. 2d 443 (La. 1991); *Tokarz v. Frontier Fed. Sav. & Loan Ass'n,* 656 P. 2d 1089 (1982)).)

[2] The fourth case, *Chiarella,* involved insider trading by a printing company employee who used knowledge of pending corporate takeover bids gained through his employment by purchase shares of the companies involved. 445 U.S. 222.

their customers for gross acts of misconduct and deceit." *Kensey*, 704 A.2d at 45.[3] Therefore, the Court is not persuaded that the relationship between a bank and its customer is equivalent to that of an employer and a prospective employee.

Germane to the duty-to-disclose analysis is what, precisely, Bayda contends was omitted: notice that the real reason Gilgorri stepped down was part of the resolution of her harassment complaint against Defendants' Plant Manager. Defendants contend, "Bayda had no right to learn of [] Gilgorri's harassment complaint, and Defendants' decision to withhold that information cannot give rise to an actionable fraud claim based on an omission." (ECF No. 6-1 at 8 (citing *Poiner v. Cty. of Middlesex*, 2007 N.J. Super Unpub. LEXIS 2541, at *29 (N.J. App. Div. June 7, 2007) (recognizing an employer's "strong interest in maintaining the confidentiality . . . of its investigations of harassment complaint") and *Payton v. N.J. Tpk. Auth.*, 691 A.2d 321, 329-30 (1977)).) The Court agrees. It would be incongruous for the law to recognize the importance of confidentiality in the sphere of harassment investigations,[4] but then require employers to reveal

---

[3] Bayda contends Defendants failed to disclose Gilgorri's harassment complaint because they "fully understood that disclosing Gilgorri's harassment complaint would cause Bayda (and any reasonable candidate for that matter) to think twice about accepting the position" and that this silence "amounts to the exact type of 'swindling' that New Jersey's Courts have endeavored to prevent through the imposition of a duty to disclose." (ECF No. 15 at 7-8.) While not implicated in the Court's decision, the Court observes that job openings are created through a variety of circumstances, and Bayda has not demonstrated precisely how or why the circumstances behind the Human Resources Manager opening makes the position more or less difficult to fill, or more or less attractive to occupy.

[4] The Court recognizes the terrain here may be shifting. For instance, in March 2019, New Jersey enacted a law providing, among other things, that nondisclosure agreements related to any claim of discrimination, harassment or retaliation are "against public policy and unenforceable." N.J. Stat. Ann. § 10:5-12.7. This law was enacted in March 2019, well after the events that give rise to this action, and, in any event, applies only to contracts and agreements entered, renewed, modified, or amended after the effective date of March 18, 2019. N.J. Stat. Ann. § 10:5-12.11. Thus, the law is inapplicable to this litigation. Moreover, in the employer-employee context, this law does not create a duty to disclose such settlements, it only prohibits employers from preventing employees from revealing such settlements.

those same complaints to any prospective employee. Thus, the Court finds there was no duty to disclose as contemplated by *Argabright,* so Defendants were under no obligation to reveal the existence of Ms. Gilgorri's harassment complaint to Bayda during the hiring process.

However, even a finding that Defendants did have a duty to disclose would not be dispositive to this Motion. That is because Rule 9(b) requires a plaintiff to plead the elements of his or her action for fraud. *Toner v. Allstate Ins. Co.*, 829 F. Supp. 695, 705 (D. Del. 1993) (citing *Christidis v. First Pa. Mortgage Trust,* 717 F.2d 96, 99 (3d Cir. 1983)). Bayda has not met the particularity required of pleadings for fraud by omission pursuant to Rule 9(b) because Bayda did not specifically plead that Defendants had a duty to disclose this information to him. Bayda's Complaint does not mention the phrase "duty to disclose," nor does the Complaint ever use the word "duty." The Complaint alleges only that Defendants failed to disclose a fact that would have made accepting the position less attractive to him. Because Bayda has not met the particularity required of fraud proceedings pursuant to Rule 9(b), Bayda's fraud in the omission allegation has not stated a claim upon which relief can be granted.

### b. Fraud by Misrepresentation

Bayda also claims Defendants committed fraud by misrepresenting material facts. Bayda continues to be bound by *Toner* to plead each of the elements for common law fraud discussed above for his misrepresentation claim pursuant to Rule 9(b).

Bayda contends statements made to him during the hiring process, *e.g.*, that Gilgorri stepped down "for personal reasons," were material misrepresentations. (ECF No. 15 at 10.) Defendants claim "personal reasons" was accurate, because "any reasonable interpretation of the phrase 'personal reasons' undoubtedly would include the actual reason [] Gilgorri stepped down from her position." (ECF No. 6-1 at 9.) Bayda counters that Defendants further misrepresented the

personal reason as Gilgorri being "at a stage of her life where she does not need the stress of a manager's job." (ECF No. 15 at 10 (citing ECF No. 1 at ¶ 18).)

The Court concludes here again that Bayda has not met the sufficiency of pleading required by either *Iqbal* or *Simparel.* Bayda claims misrepresentation by Defendants. The Complaint references four specific communications from Defendants, but only two could plausibly be read as a misrepresentation: that Bayda was informed Gilgorri had stepped down for "personal reasons" and that he was told Gilgorri stepped down because she "did not need the stress of a manager's job." (ECF No. 1 ¶¶ 17, 18.) Bayda alleges that when Grinnell made these communications during his November 2016 interview, Grinnell was "a Director of Human Resources." A review of the Complaint demonstrates Grinnell is the only person who could be understood as having made a misrepresentation. It is Grinnell who said Gilgorri stepped down for "personal reasons" and because she "did not need the stress of a manager's job." Therefore, the Court concludes if there was a misrepresentation made by Defendants it could only have originated from Grinnell.

However, even if Grinnell's statements were misrepresentations, Bayda nowhere states in his Complaint that when Grinnell made these statements that she personally knew the real reason for Gilgorri's demotion. Instead, Bayda contends the Complaint pleads sufficient factual allegations to permit the plausible inference that Defendants made a misrepresentation of fact to Bayda. (ECF No. 15 at 10.) At its core, Bayda states in the Complaint, "the facts conveyed to Bayda *before* he accepted Defendants offer are facially different than the facts related to Bayda *after* he accepted Defendants' offer." (*Id.*) Bayda concludes from this that Defendants knowingly misrepresented a material fact that he relied on to his detriment. The Court is not persuaded.

Rather, the Court concludes Bayda has not sufficiently alleged Grinnell knew during the November 2016 interview Gilgorri had stepped down as a condition of the settlement of her

harassment complaint. Grinnell's state of mind is significant because the first element in common law fraud is that a defendant knowingly misrepresented some fact. Bayda's Complaint alleges "Defendants intentionally withheld the existence and/or nature of Gilgorri's harassment Complaint against Miley." Only Grinnell makes statements the Court could infer to be a misrepresentation, characterizing Ms. Gilgorri's stepping down from the Manager's position as being motivated by "personal reasons" and because Gilgorri "did not need the stress of a manager's job."

It is clear Grinnell knew of Gilgorri's harassment complaint on January 31, 2017, because that is when Grinnell informed Bayda of that fact. (ECF No. 1 ¶ 29.) But, it is not clear from the Complaint Grinnell knew of the real reason for Gilgorri's stepping down from the manager's position in November 2016. While "detailed factual allegations" are not required, the Complaint must have "more than an unadorned, the defendant-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557.) Here, Bayda has made such an unadorned statement of harm by failing to allege Grinnell had knowledge of Gilgorri's harassment complaint when she told Bayda that Gilgorri had stepped down due to "personal reasons." Instead, Bayda states only that "the facts conveyed to Plaintiff *before* he accepted Defendants offer are facially different than the facts related to Plaintiff *after* he accepted Defendants' offer," (ECF No. 15 at 10), and from this Bayda concludes Defendants misrepresented a material fact that he relied on to his detriment.

*Iqbal* requires a plaintiff to allege "more than a sheer possibility that a defendant has acted unlawfully." In failing to plausibly allege Grinnell had knowledge of the harassment settlement when she told Bayda that Gilgorri had stepped down for "personal reasons," Bayda has not met the particularity required of fraud proceedings pursuant to Rule 9(b) and so Bayda's fraud in the misrepresentation allegation has not stated a claim upon which relief can be granted.

### c. Reasonable Reliance and Resulting Damages

Finally, the Court concludes Bayda has not sufficiently pled his reasonable reliance on any misrepresented fact and resulting damages. In the Complaint, the damages from any reliance on a misrepresentation appear to arise only upon his termination—not when, for instance, he discovered the real reason for the opening in Defendants' human-resources department. Indeed, Bayda worked for Defendants for 10 months after learning of the real reason the Manager's position had opened and does not contend learning this information caused any damage or caused him to change or even question his course of action. He does not allege that being in the middle as a supervisor of Gilgorri and reporting to Miley made his employment unbearable, difficult, or even vaguely uncomfortable during those 10 months. He does not allege that upon learning of this harassment complaint he quickly began to look for employment elsewhere. He accepted a position from which he was terminated for reasons that, on their face, bear no relation to the fact of the harassment complaint or his position reporting to the subject of a harassment complaint and supervising the originator of that harassment complaint, namely that "it was not working out" and that he could "not make changes fast enough." (ECF No. 1 at ¶ 35.) His only statement about his employment with Defendants is that before his termination he had no indication his employment was at risk. Bayda claims reasonable reliance and resulting damages without stating anywhere how these damages were manifested. As a result, Bayda has not sufficiently pled his reasonable reliance on any misrepresented fact and resulting damages, and therefore, the Complaint does not state a claim upon which relief can be granted.

Because Bayda did not sufficiently plead a duty to disclose, or that a knowing misrepresentation of fact was made, or that he was damaged by any reasonable reliance on a misrepresentation, Bayda has not stated a claim upon which relief can be granted. Accordingly,

Defendants' Motion to Dismiss the Complaint is **GRANTED**.

Bayda requests that in the event Defendants' Motion is granted that the Court give Bayda leave to amend the Complaint. (ECF No. 15 at 14.) Bayda cites Fed. R. Civ. P. 15(a), pursuant to which "leave [to amend] shall be freely given when justice so requires." Bayda contends leave to amend should be granted "since there is no evidence that the alleged deficiencies cannot be cured with additional facts." (*Id.*) Bayda further says this request for leave to amend "is not motivated by bad faith, is not the result of undue delay, and would certainly not result in any perceivable prejudice to Defendants." (*Id.* at 15.)

Defendants counter that leave to amend should be denied as any Amended Complaint would be futile because any new facts still will run aground on the shoals of the absence of a legal duty to disclose in the employer-prospective employee relationship and because, even if there were misrepresentations, "there is no causal connection between the alleged misrepresentations and Bayda's damages." (ECF No. 16 at 9.)

A district court generally grants leave to correct deficiencies in a complaint by amendment. *See DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 251 (3d Cir. 2012); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Because it is conceivable Bayda may be able to assert facts stating a cognizable common law claim for fraud, the Court will grant Bayda an opportunity to file an amended complaint.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE** for failure to state a claim upon which relief can be granted. Bayda has 30 days to file a final amended complaint. An appropriate Order follows.

**Date: October 31, 2019**
          */s/ Brian R. Martinotti*
          **HON. BRIAN R. MARTINOTTI**
          **UNITED STATES DISTRICT JUDGE**